Mr. Justice Walker delivered the opinion of the Court. The defendant, and George Potatoe, were indicted* as principals, and Cassalowa, Young Bird, and Moses Glory, as accessories to the murder of David Scentie. The defendant was brought to trial, and convicted of murder in the first degree, and judgment rendered thereon against him from which he has appealed. The facts, as collected from the evidence, are, substantially, that a company had assembled to witness a show exhibited near the Indian line; that the defendant, and the other persons indicted, were there, and were frequently seen together, apart from the crowd, in conference or conversation, the purport of which seems not to have been known. That Cassalowa, one of the party, came to the witness, Adair, and borrowed money to redeem his bowie knife, which had been, pledged for liquor, and that he did redeem it. This was near night Defendant, and those indicted with him, as well as the deceased, witness Adair, and some others, were drinking but not intoxicated. No previous grudge or quarrel is proven to have existed between any of the parties, nor had there been a quarrel or misunderstanding during the day at that place. About dark, Adair set off home, accompanied by Scentie, who had obtained Adair’s permission to ride behind him home. They had arrived at the place where Adair’s horse was hitched, and were in the act of getting on him, when Cassalowa rode up, and said to Adair that he would kill him, accompanying his declaration with a blow with his bowie knife, which wounded Adair in the breast; he passed Adair, and then turned and advanced apparently to renew the attack, when Adair drew his pistol and wounded him. At this time, George Potatoe, Moses Glory, and the defendant, (all of whom had been with Cassalowaafewminutes before the attack by Cassalowa on Adair, near the corner of a house some forty steps off) commenced an attach upon Adair with knives, each of them stabbed him, when he succeeded in gettingloose from them, and escaped into the house a short distance from the place where he was assaulted. They pursued him to the gate near the door, and defendant struck at him with his knife as he passed through the gate. In the pursuit after Adair, Scentie seems to have been overlooked by them.. He remained at the same spot where he stood when Adair was attacked, almost entirely alone, for it seems that most of the by-standers fled from the scene of action soon after the difficulty commenced. After having pursued Adair to the gate, his pursuers returned to the place where Scentie had been left standing, and immediately after their return, the witnesses heard blows, one of which sounded like a jug thrown against something, and the others like blows stricken. The sound of these blows appeared to be where the deceased stood when the party returned, and where he soon after was found dead. Shortly after the sound of the blows ceased, defendant, and those who had acted in concert with, him, left the spot where the deceased lay, and went off into the woods. Immediately after they left, some of the witnesses, who saw them going off, approached the place and found Scentie dead, stabbed with a knife or knives in several parts of the body, and bruised on the face from a blow received upon it. There was circumstantial evidence, and repetitions in detailing facts, which it is not important to notice. Nor do we deem it important to consider the evidence of the witness offered by the defendant, for his statement is so flatly contradicted by all the other witnesses and so irreconcilable with any probable state of case, that we must suppose that it had no weight with the jury. With these facts before it, the circuit court permitted the whole of the evidence, including the conversation between Cassalowa and Adair, with regard to redeeming, the bowie knife, and the attack subsequently made by Cassalowa upon Adair, to go to the jury. Defendant objected on the trial to the introduction of thi® evidence upon the ground that this conversation and fight had no connexion' with the killing of Scentie. Itis very true thatthere was no evidence of an avowed conspiracy, nor was there evidence of previous grudge or cause of quarrel, yet the conduct of the parties during the whole day, and particularly just before the attack made by Cassalowa on Adair, as well as their prompt participancy in the fight followed up immediately af-terwards by the death of Scentie1, and their departure-together into the’ woods, all tend to1 fix upon them the character of conspirators and actors in a common cause. And as to motive, although none is disclosed, no one can doubt that there must have existed some previous grudge between the parties who made the attack and those' assailed. It was in truth but one continued attack from- the time Adair was assaulted until Scentie was killed, the only entermission being' the time taken in giving chase to Adair, and in returning to the spot where Scentie had been left. Viewed in this light, the whole of the evidence was admissible, and was properly permitted to go to the jury. The second objection is a mere question of the weight of evidence-, which, when submitted to a jury and decided by them, should rarely be set aside by an appellate court; indeed is never done, unless in extreme cases. The conference held by the defendants, Cassalowa' and others, at the corner of the house, immediately preceding the attack made by Cassalowa, followed up by the defendant and his associates, all of whom were armed with knives, the fact that Scentie was with Adair at the time of the attack, (the witness says within four feet,) and that he was about going off with Adair, although his wife was there and probably on foot, renders it not improbable that he was the real object of displeasure, and that being apprised of it, he was taking protection under Adair, who thereby incurred the displeasure of the company, and made him also the object of their resentment. And it is also quite probable that the party were stimulated to direct their blows exclusively at Adair, on account of the injury which he had inflicted on Cassalowa, and in the heat of the contest overlooked Scentie, who remained at the spot where the fight commenced. Upon their return,- they found him and recognized him as an enemy on account of some previous grudge or quarrel, or possibly from the mere fact that he was the friend and associate of Adair, who had just escaped from them.. But whatever the cause may have been, there can be no doubt but that one of the party, who pursued Adair to the house, upon their return killed Scentie, and from the number of wounds inflicted, it is probable that several of them inflicted blows upon him. The evidence touching this part of the fight, is, in substance, that when the defendant and others pursued Adair; Scentie was left standing where the difficulty commenced. That, immediately after they pursued Adair to the gate, they returned to the place where Scentie stood,- the defendant with his knife still in his hand; and that very soon after their return, the witnesses, who were at some short distance off, heard the sound of blows struck, one of which sounded like that of a jug thrown against something, that the party, shortly after the sound of the blows was heard, left the spot where Scentie stood, and where he was afterwards found dead, and went into the woods. The company were scarcely out of sight in the woods, until a witness, the wife of the deceased, wentup to the place they bad left and found Scen-tie stabbed in several places with a knife or knives, his face bruised and he dead. Here we find two important facts affirmatively and positively proven: that Scentie was killed with a knife, or other sharp in-strumen of that description, and also that he was killed between the time the defendant and others left him to go in pursuit of Adair, and the time when they left the spot where he was found dead and went into the woods. If Scentie had been killed by some one else in their absence, why did they not, upon their return, give the alarm? If Scentie was not there to receive the blows, which the witnesses heard after their return to where Scentie stood, who did receive them? If they struck the blows, whom did they strike, if not Scentie? And then the wounds were inflicted with a knife, and they were armed with knives — one blow perhaps with a jug, and there was a bruise on the face. Why, if nothing wrong had happened, did they take to the woods? All these inquires naturally arise upon hearing the evidence, and tend strongly to prove that the company acted in concert, upon a common cause of quarrel, and that one and probably several of them inflicted upon the deceased blows which caused his death. The jury who heard all of the evidence, and whose duty it was to determine the question of guilt or innocence, have rendered their verdict of guilty. And the court who heard the evidence and presided at the trial, has refused to set the verdict aside, and in a case of this kind, where the question is as tó the weight of evidence, we have repeatedly decided, that, unless in extreme cases, (and this is clearly not such,) we will not set aside the verdict of the jury. Finding no error in the judgment and decision of the circuit court of Benton county, the saméis in all things affirmed* Note(*) — Tlie indictment was found in Washington, and venue changed.